IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No.: 1:18-CV-293 |
| BOHREN LOGISTICS, INC., et al. | ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Currently before the Court are American Hallmark's Motion for Summary Judgment [DE 128] and its Motion to Deposit Funds, for an Award of Attorneys Fees, and to Discharge Liability [DE 127]. The Motion to Deposit Funds will remain under advisement pending the outcome of a settlement conference.[1] The Motion for Summary Judgment will be GRANTED.

**BACKGROUND**

After a multi-vehicle accident in Brule, Nebraska resulted in numerous claims for personal injuries, deaths, and property damage (hereinafter, "the Nebraska Claims"), Plaintiff, American Hallmark Insurance Company of Texas ("American Hallmark") filed this statutory interpleader and declaratory judgment action pursuant to 28 U.S.C. 1335, 28 U.S.C. 2201 and Fed.R.Civ.P. 22. Thereafter, American Hallmark moved to deposit $1 million with the Clerk of Court's registry, minus certain fees and expenses, as the maximum amount of its liability under the terms and provisions of its insurance policy. Additionally, American Hallmark moved for summary judgment on the issue of whether it has a continuing obligation under the insurance policy to defend its insured,

---

[1] With respect to the Motion to Deposit Funds various Defendants have filed opposition briefs and/or joined in opposition briefs filed by other Defendants. *See* DE 131, 132, 138, 139, and 140.

1

Bohren Logistics, Inc. ("Bohren"), once the funds are deposited. Bohren opposes this Motion. On November 4, 2019, in an attempt to resolve all the outstanding motions, the undersigned outlined the issues presented in the motions and respective responses and ordered the parties to engage in a settlement conference with Magistrate Judge Susan Collins. Additionally, the Court indicated that in its preliminary view, if the case could not be settled, it would require supplemental briefing on American Hallmark's Motion for Summary Judgment. [DE 159].

Subsequent to that Order, on November 8, 2019, one group of Defendants filed a "Motion for Clarification of Order" [DE 161]. The Court took that motion under advisement and set the matter for a telephone status and scheduling conference. [DE 169]. On December 11, 2019, the Court held a telephone conference wherein it discussed setting the case for a settlement conference. During this conference, counsel for Bohren indicated that even if the settlement conference resolved the Motion to Deposit Funds, a ruling would be necessary on whether American Hallmark had an ongoing and continuing duty to defend Bohren in the Nebraska Claims. Accordingly, the Court entered the following minute entry at the conclusion of that conference:

> The Court notes that there is a pending motion for summary judgment as to whether American Hallmark will continue to owe a duty to defend to Bohren Logistics upon deposit of the interpleaded funds in the Court's registry. In the original briefs on this motion, Bohren Logistics, without specifying which state's law applies to resolve the issue, cited cases from outside jurisdictions to support its position. This raises the question that has not been fully briefed as to whether Indiana law applies to the issue or whether another jurisdiction's law applies. The parties are ordered to file briefs within 30 days as to which jurisdiction's law is determinative of this issue and to cite authorities from that jurisdiction in support of their respective positions.

[DE 172]. The Court is now in receipt of the parties' supplemental briefs as directed in the December 11, 2019 Order and the motion is ripe for adjudication.

## APPLICABLE STANDARD

Summary judgment is appropriate when there are no genuine disputes of material fact and

the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed R. Civ. P. 56(e)).

## STATEMENT OF FACTS

The underlying facts relevant to American Hallmark's motion are undisputed and thus, the Court accepts as true that American Hallmark had in effect on July 31, 2016, the date of the aforementioned accident, a combined single limit, one million dollar ($1,000,000) liability policy numbered AHI-P2238-130260, insuring Bohren (hereinafter "the Policy"). The Policy contains this provision with respect to American Hallmark's duty to defend its insured:

**SECTION II – LIABILITY COVERAGE**

**A. COVERAGE**

* * *

Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

DE 129, Exhibit A.

American Hallmark further declares that there are competing interests in the Nebraska Claims and concedes that any judgments against Bohren in this case will exceed the policy limits. Thus, it seeks to deposit the policy limits of $1,000,000 with the Court Registry and seeks an order declaring that once the funds are deposited, its duty to defend Bohren in the Nebraska Claims

ceases under the above policy provision.

**DISCUSSION**

**A. Choice of Law and the Court's Role in Interpreting State Law**

From the initial briefs of the parties, it was unclear whether the parties were in agreement as to the applicable law to be applied in this case. A federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits, "including the state's conflict rules, meaning that Indiana's choice of law rules apply to this case." *Land v. Yamaha Motor Corp.,* 272 F.3d 514, 516 (7th Cir. 2001). However, the parties' supplemental briefing clearly indicates that they are now in agreement that Indiana law applies to the coverage issue in this case. [DE 180: "Bohren concedes that the balance of Indiana law evaluating insurance litigation conflict of law analysis tilts in favor of Indiana law governing here."]. As a result of this agreement of the parties that Indiana law governs the issues in this case, the Court's obligations in applying state law in a diversity case have very recently been outlined by this Court's colleagues as follows:

> When resolution of an issue depends upon state law, courts must apply the law that would be applied by the state supreme court. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 773 (7th Cir. 2002). When an issue of state law has not been addressed by the state supreme court, a federal court sitting in diversity must deduce, as closely as possible, how the state supreme court would rule. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 720 (7th Cir. 2004) (citing *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636–37 (7th Cir. 2002)). "If the state supreme court has not spoken on a particular issue, then decisions of the intermediate appellate court will control 'unless there are persuasive indications that the state supreme court would decide the issue differently.' " *BMD Contractors, Inc. v. Fid. and Deposit Co. of Md.*, 679 F.3d 643, 648 (7th Cir. 2012) (quoting *Research Sys. Corp. v. IPSOS Publicité*, 276 F.3d 914, 925 (7th Cir. 2002)); see also *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation and Sheet Metal Co.,* 302 F.3d 667, 674 (7th Cir. 2002). Finally, if there are no directly applicable decisions, then a court may consult relevant state precedents, analogous decisions, considered dicta, academic works, and any other reliable source that would indicate how the state supreme court would rule. *BMD Contractors*, 679 F.3d at 648.

*The Travelers Indemnity Company v. Johnson,* No. 4:17-CV-86-TLS-JEM, 2020 WL 820921, at *2–3 (N.D. Ind. Feb. 18, 2020).[2] Mindful of these obligations, the Court turns now specifically to an examination of the issue raised in the pending motion.

### B. <u>Application of Indiana Law</u>

The issue, as framed by American Hallmark in its Motion for Summary Judgment, is whether under Indiana law, the deposit of interpleaded policy limits into the court's registry releases an insured from its duty to defend its insured. American Hallmark argues that it does and, in support, cites to its Policy provision indicating that its duty to defend is exhausted by payment of the coverage limits for judgments and settlements as well as two district court cases within Indiana interpreting Indiana law which hold that its duty to defend will cease upon interpleading the funds into the Court's registry. *See Carolina Cas. Ins. Co. v. Estate of Zinsmaster*, No. 1:06-CV-33-TS, 2007 WL 3232461, at *4 (N.D. Ind. Oct. 30, 2007) and *Carolina Cas. Ins. Co. v. Estate of Studer*, 555 F. Supp. 2d 972, 980 (S.D. Ind. 2008).

---

[2] The Seventh Circuit has provided the following framework for a district court addressing a state law issue:

> In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree. A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law, for under Erie our task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past. But decisions of intermediate state courts lack similar force; they, too, are just prognostications. They could in principle persuade us to reconsider and overrule our precedent; assuredly they do not themselves liberate district judges from the force of our decisions.

*Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (internal citations omitted).

In response, Bohren asserts that depositing the policy limits into the registry of the court does not extinguish American Hallmark's duty to defend its insured. It contends that the plain language of the policy refutes American Hallmark's position, because the duty to defend exists until the coverage limit "has been exhausted by payment of judgments or settlements," and payment into the court's registry is neither the payment of a judgment or settlement. Thus, Bohren argues, under the terms of the Policy itself, the duty to defend is not terminated. As for the two district court cases cited by American Hallmark, Bohren emphasizes that these two decisions "completely ignore that an ambiguous insurance policy should be construed in favor of the insured." (DE 180 at 4).

In Indiana, insurance contracts are governed by the same rules of construction as other contracts, and the proper interpretation of an insurance policy is generally a question of law appropriate for summary judgment. *Wellpoint, Inc. v. Nat'l Union Fire Ins. Co.,* 952 N.E.2d 254, 258 (Ind.Ct.App.2011), *reh'g denied, trans. denied* . If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* An ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other. *Id.* Rather, an insurance policy is ambiguous if reasonable people may honestly differ as to the meaning of the policy language. *Id.* When insurance policies are interpreted, exceptions, limitations, and exclusions to coverage must be plainly expressed. *Id.* at 258–59.

The parties are again in agreement that neither the Indiana Supreme Court nor the lower Indiana state courts have precisely addressed the question raised here and thus, the Court's role as a prognosticator of Indiana state law is front and center. To that end, the Court is not without any guidance at all on this issue. As American Hallmark points out, in *Zinsmaster* and *Studer*, District Judges Theresa Springmann and Sarah Evans Barker both were faced with policy provisions

similar to the one in this case and they both concluded in favor of terminating an insurer's duty to defend.

In *Zinsmaster,* an employee of the insured was involved in an accident on the Indiana toll road resulting in multiple and varying for bodily injury and property damage arising from the accident. *Estate of Zinsmaster,* 2007 WL 3232461 at *1. The parties conceded that the total value of all the claims exceeded the $1 million policy limit. *Id.* Carolina Casualty, the insurer, then filed its interpleader/declaratory relief and paid its liability limits into the registry of the Court.[3] Thereafter, Carolina Casualty filed its motion for summary judgment seeking to be discharged from any further duty to defend.[4] *Id.* at *2.

In examining the issue, the Court noted that Carolina Casualty argued that either Indiana or Illinois applied to the case and thus, it undertook a detailed analysis of the laws in both jurisdictions. With respect to Indiana law, it took particular interest in the Seventh Circuit's decision in *Abstract & Title Guaranty Co. v. Chicago Insurance Co.*, 489 F.3d 808, 811 (7th Cir. 2007). That case contained an insurance policy with the same duty to defend provision as the one in both *Zinsmaster* and in the present case, i.e., a provision indicating that the duty to defend ceases after the applicable limit of the insurer's liability had been exhausted by the payment of judgments and settlements. Applying Indiana law, the Seventh Circuit noted that no controlling Indiana authority existed and ultimately concluded that the contract language was: (1) not ambiguous; (2) discharged the insurer from a further duty to defend after the insurer paid its limits in claim

---

[3] Unlike in this case, the request to interplead the policy limits was not opposed by any of the potential claimants.

[4] Prior to the Court ruling on that motion, the parties entered into a meditation agreement and Court ordered distribution of the $1 million. Because the Motion for Summary Judgment was filed prior to the distribution of the $1 million, it did not address the affect of the distribution of the fund on its duty to defend.

7

expenses by depositing the funds with court. *Abstract & Title,* 489 F.3d at 812 ("[W]e would be hard pressed to read this contract to require [the insurance company] to both defend the suits and pay to its full limits."). Additionally, the Seventh Circuit rejected cases reaching opposite conclusions from other jurisdictions calling them "informative" but not determinative. *Id.* at 812.

The *Zinsmaster* Court then went on to examine cases under Illinois law as well but ultimately, it concluded that under either Indiana or Illinois law the insurer's duty to defend is discharged once the policy limits have been exhausted by payment or tendered unconditionally to the Court:

> [T]here may be a difference in the law of Indiana and Illinois regarding the [e]ffect of interpleader on the contractual duty to defend, at least where those funds have not be unconditionally tendered or distributed… Both Indiana and Illinois focus on whether the tender or payment is conditional, or a full surrender of the policy limits. Where, as here, the insurance company has exhausted the policy limits with no hope of retrieving the funds, any difference does not affect the outcome.

*Zinsmaster,* 2007 WL 3232461, at *5.

Judge Barker faced a similar question in *Estate of Studer*, 555 F.Supp.2d 972 (S.D. Ind. 2008), and likewise concluded, largely relying on the logic in *Zinsmaster*, that the insurer's duty to defend is discharged upon a tender of the policy limits to the Court's registry. *Studer*, 555 F. Supp. 2d at 978 ("Our examination of the relevant caselaw …mirrors the *Zinsmaster* Court's analysis. As discussed below, because we find that Carolina Casualty's deposit of the $1 million to the registry of the court was a full surrender of the policy limit, rather than a conditional tender, even though the funds have not yet been distributed, any difference between Indiana and Illinois law is not outcome determinative under the facts of this case.").

In reviewing the thoughtful and erudite reasoning of both *Zinsmaster* and *Studer,* this Court is disinclined to rule in a manner that is in conflict with the outcome in these cases. While the Court is cognizant of cases in other state jurisdictions holding that merely interpleading the policy

8

limits does not excuse the duty to defend, *see i.e., Mt. Hawley Ins. Co. v. FSLIC,* 695 F.Supp. 469, 474 (C.D.Cal.1987) (stating that the duty to defend remains after interpleader, "otherwise, where the damages exceed the policy coverage, the insurer could walk into court, toss the amount of the policy on the table, and blithely inform the insured that the rest was up to him."), this Court does not find any more support in Indiana law for this conclusion than it does for the conclusions in *Zinsmaster* and *Studer*. Moreover, there is an equally valid line of outside authorities supporting the proposition that when, as here, an insurer has no potential obligation to indemnify an insured because it has paid out its policy limits, it likewise has no further duty to defend. *See i.e., Zurich Insurance Co. v. Raymark Industries, Inc.,* 514 N.E.2d 150, 163 (Ill. 1987).

The Court further emphasizes the concept raised in *Zinsmaster* that it is the *unconditional* tender of the funds in the interpleader action that is relevant. Indeed, in exchange for discharging its obligations to indemnify or defend its insureds, an insurer has, in essence, assigned its right to reclaim said funds if the underlying suits turns out more favorably than the insurer believed at the time of interpleader. *See Zinsmaster,* 2007 WL 3232461 at *5 ("Both Indiana and Illinois focus on whether the tender or payment is conditional, or a full surrender of the policy limits…"). This proposition serves the purpose of balancing the risks an insurer accepts when it interpleads the full policy limits, i.e. that it may have overpaid its potential liability while at the same time relieving it from further obligations to its insured. Accordingly, the Court holds that upon American Hallmark's unconditional tender of the policy limits, its duty to defend Bohren in the Nebraska Claims has been discharged.[5]

---

[5] The court is cognizant that the Motion to Deposit funds remains under advisement and thus, there has been no deposit of the funds in the Court's registry. The Court is equally aware that the Declaratory Judgment Act only authorizes courts to resolve actual controversies, not to render an advisory opinion given a hypothetical set of facts, *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); *Deveraux v. City of Chicago,* 14 F.3d 328, 330–31 (7th Cir.1994); *Am. Home Assur. Co. v. Stone*, 61 F.3d 1321, 1329 (7th Cir. 1995), as modified (Aug. 24, 1995). Here, the objections to the

## **CONCLUSION**

Based on the foregoing, American Hallmark's Motion for Summary Judgment is GRANTED. Upon the unconditional tender of the policy limits to the Clerk's Registry, the Court DECLARES and ADJUDGES that American Hallmark has fulfilled its obligation to defend Bohren in the Nebraska Claims. The case remains pending as to the resolution of the Motion to Deposit funds.

ENTERED: This 4th day of March, 2020.

s/ William C. Lee
United States District Court

---

Motion to Deposit Funds are not to the actual tender of the funds by the insured into the Court's Registry but to the amount that should be tendered. As a result, this Court's decision on the affect of the tender on the coverage issue presented is not advisory but a resolution of an actual controversy based upon the specific facts presented to the court. !